## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| CARD TECHNOLOGY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>DATACARD INCORPORATED<br><br><br>Defendant. | Civil Action No.<br><br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Card Technology Corporation ("Card Technology") alleges as follows:

### NATURE OF THE ACTION AND THE PARTIES

1. This is a civil action for the infringement of United States Patents Nos. 5,889,941 ("the '941 Patent"); 6,014,748 ("the '748 Patent"); and 6,196,459 ("the '459 Patent"); (collectively, "the Card Technology Patents"). As this case proceeds with continued investigation and discovery, Card Technology may find basis for amending this complaint to assert other patents and causes of action not presently included in this complaint.

2. Plaintiff Card Technology is a Delaware corporation with its principal place of business at 70 Eisenhower Drive, Paramus, New Jersey 07652, and a place of business at 10925 Bren Road East, Minneapolis, Minnesota 55343. Card Technology owns the Card Technology Patents, which provide inventive solutions for personalization of cards including cards known in the industry as "smart" cards as further described herein.

3. Defendant Datacard Incorporated (Datacard) is a Delaware corporation having its principal place of business at 11111 Bren Road West, Minnetonka, Minnesota 55343. Datacard

1

is a provider of equipment and software for personalizing cards, which products are sold in conjunction with the Datacard Smart Card Personalization Manager™ (SCPM), which provides control of the personalization of cards including personalization of smart cards by card personalization machines sold by Datacard and others.

## JURISDICTION AND VENUE

4. Because this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.* and specifically 35 U.S.C. § 271, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

5. This Court has personal jurisdiction over Defendant Datacard because Datacard has its principal place of business in this District, transacts business regularly in this District, and has caused injury to Plaintiff by committing acts of infringement of the Card Technology Patents in this District. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(b).

## THE CARD TECHNOLOGY PATENTS

6. The issuance of personalized cards by organizations to their users, customers, employees, etc., is ubiquitous to modern life. Personalized cards take many forms, such as credit, debit and identification cards, which provide a multitude of functions, including controlling access to physical places such as offices, to use equipment such as enabling handheld telephone devices, for participation in financial transactions or for personal identification. Personalized cards are typically customized by personalization machines to include information, such as the card holder's name, account number and expiration date which are embossed into the plastic of the card, a magnetically encoded stripe containing the card holder's name, account

number and expiration date, an optional picture of the user and, where higher security or data storage is required an embedded integrated circuit which contains a processor and associated memory which must be programmed with application programs and/or data at the time of issuance. This latter type of card, including a processor and associated memory, is known as a "smart card".

7. An increase has occurred in the size and number of application programs, digital data, etc. stored in smart cards causing the personalization thereof to become an increasingly time consuming process. Increased processing time to program the integrated circuits of smart cards is a bottleneck substantially reducing the otherwise high speed processing capability of commercially available card personalization machines. Smart card processing also typically involves the embossing of characters into a plastic blank card, the magnetic stripe encoding of data and optional application of a user's picture common to non-smart cards.

8. In the card personalization industry, the largest machines are designed to have throughputs of well over one thousand cards per hour. However, the personalization of smart cards involving the programming of the integrated circuit(s) prior to the inventions covered by the Card Technology Patents was at a throughput substantially less than the rated processing speed of card personalization machines of Card Technology and Datacard as a result of the increase in size of the application program(s) stored therein and data storage requirements. The increase in size of the application program(s) and data storage requirements caused the one thousand plus per hour rated throughput of large personalization machines to be limited to a maximum of a few hundred cards per hour. This reduction in processing speed of personalization of smart cards prior to the inventions of the Card Technology Patents

3

substantially increased the cost of issuing smart cards. The inventions covered by the Card Technology Patents permit smart card processing to approach the rated capacity of commercially available personalization machines.

9. The '941 Patent, entitled "System and Apparatus for Smart Card Personalization" issued on March 20, 1999. The '941 Patent inventors are David R. Tushie and William W. Haeuser. The '941 Patent is now, and has been at all times since its date of issue, valid and enforceable. Card Technology is the assignee and sole owner of the '941 Patent, and the sole owner of the right to sue and to recover for any infringement of that patent.

10. The '748 Patent, entitled "System and Apparatus for Smart Card Personalization" issued on January 11, 2000. The '748 Patent inventors are David R. Tushie and William W. Haeuser. The '748 Patent is now, and has been at all times since its date of issue, valid and enforceable. Card Technology is the assignee and sole owner of the '748 Patent, and the sole owner of the right to sue and to recover for any infringement of that patent.

11. The '459 Patent, entitled "Smart Card Personalization In a Multistation Environment," issued on March 6, 2001. The '459 Patent inventors are Robert Neal Goman, Denis C. Burand, Thomas L. Younger and Robert S. Ehrlich. The '459 Patent is now, and has been at all times since its date of issue, valid and enforceable. Card Technology is the assignee and sole owner of the '459 Patent, and the sole owner of the right to sue and to recover for any infringement of that patent.

### UbiQ DEVELOPMENT OF THE CARD TECHNOLOGY PATENTS

12. The Card Technology Patents were developed by UbiQ, Inc., a Minnesota corporation ("UbiQ"). UbiQ was formed in 1994 in Minneapolis to develop card personalization

machines to process roll stock into finished smart cards.  By the third quarter of 1995, UbiQ had undertaken development of a software platform for enhancing the operation including the throughput of existing card personalization machines including the Data Card Model 9000, which was not capable as offered for sale by Datacard of processing smart cards at speeds approaching the rated throughput thereof.  The development of the platform included the invention of the subject matter disclosed and covered by the '941, '748, and '459 Patents.  The software platform was operational and commercially marketed by UbiQ for use with the Data Card Model 9000 and with personalization machines of other manufacturers from 1998 until August 6, 2004, at which time UbiQ was merged into NBS UbiQ Incorporated, which is a Minnesota corporation and a wholly-owned subsidiary of Card Technology.  Thereafter, NBS UbiQ Incorporated transferred all rights, title and interest, including all rights to sue and to recover for any damages resulting from infringement of the '941, '748, and '459 Patents, to Plaintiff Card Technology.

      13.   By 1997, UbiQ was demonstrating operation of the inventions of the Card Technology Patents in conjunction with Datacard's Model 9000 card personalization machine, which it legally purchased from Datacard.  Datacard sales representative, Michael Fisher, was informed of this implementation and it was demonstrated to him.  Thereafter, on information and belief, Michael Fisher prompted Robert Beer of Datacard to contact coinventor, Thomas Younger of UbiQ, to request a demonstration of this implementation.  Two meetings occurred in 1998 between employees of UbiQ and Datacard, including a meeting on January 28, 1998.  Robert Beer and Peter Thorson of Datacard and coinventors, Neal Goman and Thomas Younger of UbiQ, attended the meetings, at which the implementation of the inventions of the Card

Technology Patents was demonstrated by UbiQ to Datacard.  The meetings demonstrated the UbiQ server architecture of the Card Technology Patents working on the Datacard Model 9000.  UbiQ was led to believe that Datacard had an interest in an original equipment manufacturing relationship between UbiQ and Datacard.  On information and belief, Datacard copied the operation of UbiQ's inventions covered by the Card Technology Patents in the Datacard SCPM which was introduced to the industry in 1999 to provide substantial enhancement of operation of Datacard's personalization machines in processing smart cards beyond their then rated capability.

## DATACARD'S INFRINGING ACTIVITIES AND NOTICE THEREOF

14.     Datacard has its principal place of business and a regular and established place of business in this District and is engaged in activities within this District constituting infringement, inducement of infringement and contributing to infringement of the Card Technology Patents.  Such activities include:  (1) Manufacturing, using, selling and distributing infringing devices, software and services in this District; (2) Direct solicitation of sales and actual sales of infringing devices, software and services to customers in this District, including Datacard's online Web site http://www.datacard.com/ but not limited thereto; (3) Knowingly communicating to customers located in this District through telephone and online contacts to support the use of Datacard's infringing products; (4) Conducting marketing, promotion, and advertising activities in this District for infringing products constituting offers to sell in publications directed at customers in this District; (5) Providing instructions, support and services to customers who are infringing the Card Technology Patents in this District; and (6) Engaging in licensing agreements with companies located in this District for the marketing, advertising, sales, support and use of

products and services which infringe the Card Technology Patents.

15. In the summer of 2001, UbiQ notified Datacard of the '941, '748 and '459 Patents and foreign counterpart pending patent applications thereof and that these patents and applications were available for license.  UbiQ and Datacard met at least two times on June 26, 2001 and August 24, 2001 and exchanged correspondence during which Datacard, based upon information and belief, was informed that the Card Technology (then UbiQ) Patents covered Datacard's SCPM used to control Datacard's and card personalization equipment manufactured by other companies.

16. The August 24, 2001 meeting was with Mr. Jerry Johnson, President of Datacard, during which Mr. Johnson was informed of Datacard's infringement of the Card Technology Patents.  Licensing of the Card Technology Patents was discussed during the two meetings with Mr. Thomas W. McPherson who was counsel to Datacard.  UbiQ's noticing of Datacard included providing files of the then-issued patents which were requested by and made available to Mr. McPherson. Infringed claims were identified to Mr. Johnson and Mr. McPherson.  UbiQ offered to license the Card Technology Patents and pending applications, but UbiQ received no reply from Datacard.  Such notice to Datacard constitutes a basis for a finding that Datacard's infringement has been willful.

17. On information and belief, UbiQ and Plaintiff each have suffered price erosion, lost sales and profits consequent from Datacard's infringement.

### FIRST CAUSE OF ACTION - DATACARD'S INFRINGEMENT OF U.S. PAT. NO. 5,889,941

18. Card Technology realleges paragraphs 1-17 above.

19. Datacard has been, and is now, infringing, inducing the infringement of, and

7

contributing to the infringement of the '941 Patent by making, using, selling and offering to sell products and services, which are covered by one or more of the claims of the '941 Patent.

20. Datacard has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '941 Patent by making, using, selling and offering to sell products and services, the use of which is covered by one or more of the claims of the '941 Patent.

21. Datacard's continuing acts of infringement constitute willful infringement of the '941 Patent.

22. Datacard's activities infringing the '941 Patent have damaged UbiQ and Card Technology and will continue to cause Card Technology irreparable harm unless such infringing activities are enjoined by this Court.

### SECOND CAUSE OF ACTION - DATACARD'S INFRINGEMENT OF U.S. PAT. NO. 6,014,748

23. Card Technology realleges paragraphs 1-17 above.

24. Datacard has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '748 Patent by making, using, selling and offering to sell products and services, which are covered by one or more of the claims of the '748 Patent.

25. Datacard has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '748 Patent by making, using, selling and offering to sell products and services, the use of which is covered by one or more of the claims of the '748 Patent.

26. Datacard's continuing acts of infringement constitute willful infringement of the '748 Patent.

27. Datacard's activities infringing the '748 Patent have damaged UbiQ and Card Technology and will continue to cause Card Technology irreparable harm unless such infringing activities are enjoined by this Court.

### THIRD CAUSE OF ACTION - DATACARD'S INFRINGEMENT OF U.S. PAT. NO. 6,196,459

28. Card Technology realleges paragraphs 1-17 above.

29. Datacard has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '459 Patent by making, using, selling and offering to sell products and services, which are covered by one or more of the claims of the '459 Patent.

30. Datacard has been, and is now, infringing, inducing the infringement of, and contributing to the infringement of the '459 Patent by making, using, selling and offering to sell products and services, the use of which is covered by one or more of the claims of the '459 Patent.

31. Datacard's continuing acts of infringement constitute willful infringement of the '459 Patent.

32. Datacard's activities infringing the '459 Patent have damaged UbiQ and Card Technology and will continue to cause Card Technology irreparable harm unless such infringing activities are enjoined by this Court.

### PRAYER FOR RELIEF

WHEREFORE, Card Technology prays for judgment as follows:

A. That this Court adjudge and decree that the Card Technology Patents are infringed by Datacard, that Datacard has induced infringement thereof, and that Datacard has contributed to infringement thereof.

B.  That the infringement, inducement of infringement, and the contributing to the infringement by Datacard has been willful.

C.  That this Court permanently enjoin Datacard and its officers, directors, agents, servants, employees, attorneys, successors, licensees, assigns, and all others in active concert or participation with Datacard, from engaging in any acts that constitute infringement, inducement of infringement, or contributory infringement of the Card Technology Patents.

D.  That this Court award Card Technology damages adequate to compensate for Datacard's infringement, inducement of infringement, and contributory infringement of its patents and any enhanced damages as the Court may see fit under 35 U.S.C. § 284.

E.  That this Court award Card Technology its costs, disbursements, and attorneys' fees for this action, including those pursuant to 35 U.S.C. § 285 together with interest as provided by law.

F.  That Card Technology be awarded such further relief as this Court may deem just and appropriate.

Dated this 1st day of November, 2005.    LINDQUIST & VENNUM P.L.L.P.

By  s/ Mark R. Privratsky
   David A. Allgeyer, #12042X
   Mark R. Privratsky, #275104
   80 South Eighth Street, Suite 4200
   Minneapolis, MN 55402
   Telephone: 612/371-3211
   Fax:  612/371-3207

&

Of Counsel:

ANTONELLI, TERRY, STOUT &
    KRAUS, LLP
Donald E. Stout
Ronald J. Shore
Alan E. Schiavelli
1300 North Seventeenth Street
Suite 1800
Arlington, Virginia  22209
Telephone:  (703) 312-6600
Facsimile: (703) 312-6666

*Attorneys for Plaintiff Card Technology Corporation*