UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Card Technology Corporation,**  Civil No. 05-2546 (MJD / SRN)

    **Plaintiff,**

    v. <span style="float:right">**REPORT AND RECOMMENDATION**</span>

**DataCard Corporation,**

    **Defendant,**

  and

**DataCard Corporation,**

    **Counterclaim Plaintiff,**

    v.

**NBS Technologies, Inc. and
Card Technology Corporation,**

    **Counterclaim Defendants.**

---

    Mark R. Privratsky, David A. Allgeyer and Christopher R. Sullivan, Lindquist & Vennum, P.L.L.P, 4200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for Plaintiff and Counterclaim Defendants.

    Jeffrey J. Keyes, John B. Lunseth II, and James J. Long, Briggs and Morgan, P.A., 80 South Eighth Street, 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for Defendant and Counterclaim Plaintiff.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

    This matter comes before the undersigned United States Magistrate Judge on Plaintiff's Motion to Stay (Doc. No. 80). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and District of Minnesota Local Rule 72.1.

    Plaintiff moves to stay Defendant's patent infringement and business tort counterclaims pending reexamination of the patents underlying the infringement counterclaims. For the

reasons stated below, the Court recommends granting the motion in part and denying it part.

**I.      FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed this action in November 2005 alleging infringement of three of its patents ("the Patent Claims").  (Doc. No. 1.)  Defendant's Answer, filed in January 2006, included the following counterclaims: (1) claims for infringement of three of its patents (Counts I, II & III), (2) a claim seeking a declaratory judgment that Plaintiff's patents were unenforceable and not valid (Count IV, "the declaratory judgment claim"), and (3) a claim for tortious interference with a prospective business advantage in Nigeria regarding the sale of products and services involving technology claimed in the various patents (Count V, the "Nigerian Counterclaim").  (Doc. No. 11.)[1]  The technology at issue with respect to the parties' patents generally involves so-called "smart cards," that is, cards such as credit cards that include additional personalized information.

Due to a partial settlement, only two of Defendant's patents–U.S. Patent No. 5,266,781 ("the '781 Patent") and U.S. Patent No. 6,474,925 ("the '925 Patent") (collectively, "the Counterclaim Patents")–remain at issue.[2]  Defendant generally alleges that Plaintiff infringes the '781 Patent and the '925 Patent ("the Patent Counterclaims").  (Doc. No. 11.)

Under the Second Amended Pretrial Scheduling Order of September 7, 2006, the parties are still in the early stage of pre-trial proceedings.  (Doc. No. 64 (ordering joint claim construction statement by March 13, 2007, with fact discovery to close on September 14, 2007, and expert discovery to close on October 12, 2007).)  Trial is scheduled for April 2008.  (Id.)

---

[1] Although Defendant filed its Counterclaims against NBS Technologies, Inc. as well as against Plaintiff Card Technology Corporation, for ease of reference this Court will refer to the Counterclaim Defendants collectively as "Plaintiff."

[2] Based upon stipulated settlement agreements, the claims and defenses regarding Defendant's third patent (Count III) were dismissed with prejudice.  (Doc. Nos. 71 & 73.)

On August 31, 2006, Plaintiff filed applications with the United States Patent and Trademark Office ("the PTO") for a reexamination of the entirety of the '925 Patent and of claims 1-3, 20-22 and 25 of the '781 Patent. In October 2006, the PTO granted those requests. Accordingly, on November 28, 2006, Plaintiff moved for a stay of the Patent Counterclaims (Counts I & II) and the Nigerian Counterclaim (Count V). (Doc. No. 80.)

**II.     DISCUSSION**

   **A.     Granting A Stay Is Within This Court's Discretion**

Federal courts have the "inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (internal citations omitted). A court is not required to stay such actions, the decision to do so being within the court's sound discretion. NTP, Inc. v. Research in Motion, Ltd., 397 F. Supp. 2d 785, 787 (E.D. Va. 2005).

Yet courts "routinely" grant such stays where the circumstances warrant. CNS, Inc. v. Silver Eagle Labs, Inc., 2004 WL 3631121, at *1 (D. Minn. Nov. 29, 2004) (granting stay where case was "in the early stages of discovery and there are obvious efficiencies to be gained" by awaiting PTO's decision). Accord ASCII Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) (noting "that there is a liberal policy in favor of granting [such] motions to stay"); GPAC, Inc. v. D.W.W. Enterprs., Inc., 144 F.R.D. 60, 62 (D.N.J. 1992) (stating that "Congress noted its approval of district courts liberally granting stays" pending reexamination). Indeed, Congress intended that the PTO's reexamination proceedings "could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases" and "would allow courts to refer patent validity questions to the expertise of the Patent Office." Patlex Corp. v. Mossinghoff, 758 F.2d 594, 602 (Fed. Cir.

1985).

### B.   At This Stage Of The Proceedings, A Stay Of The Patent Counterclaims Is Warranted In Light Of The Pending Reexamination

Plaintiff claims that a stay of the Patent Counterclaims pending the reexamination will serve the interests of judicial efficiency and economy "by avoiding unnecessary and duplicative proceedings to consider the validity of the patents, to construe numerous challenged claim terms, and to analyze infringement contentions asserting claims that will not survive the reexamination." (Mem. at 5.)  Plaintiff also contends that a stay will not prejudice Defendant. (Id. at 7; Reply Mem. at 2, 9-12.)

Defendant counters that a stay of the Patent Counterclaims is not warranted because: (1) the reexamination does not concern all of the claims of one of its Counterclaim Patents, (2) staying the Counterclaims would operate as a bifurcation of Defendant's claims from Plaintiff's Patent Claims, (3) the motion to stay "is a transparent effort to gain a tactical advantage" in light of the minimal remaining life of one of the Counterclaim Patents, (4) there is no guarantee that the reexamination will alter the Counterclaim Patents, and (5) Plaintiff "simply waited too long" to seek reexamination.  (Mem. at 1-5.)

Courts generally consider the following factors in deciding whether a stay would be appropriate:

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999), cited in, Vdata, LLC v. Aetna, Inc., 2006 WL 3392889, at *5 (D. Minn. Nov. 21, 2006), and 3M Innovative Props. Co. v. Dupont Dow Elastomers LLC, 2005 WL 2216317, at *1 (D. Minn. Sept. 8, 2005).  Accord

4

Agar Corp. v. Multi-Fluid, Inc., 983 F. Supp. 1126, 1128 (S.D. Tex. 1997) (listing factors of (1) PTO's expertise, (2) stay's effect on litigation, and (3) stage of litigation when stay sought).[3]

### 1. The Reexamination Could Reasonably Alter The Parameters Of The Litigation And, In Any Event, Will Almost Surely Facilitate This Court's Resolution Of The Patent Counterclaims

As Plaintiff notes (Mem. at 10-11), courts have identified numerous advantages to staying patent litigation during reexamination by the PTO:

> (1) All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
> (2) Many discovery problems relating to the prior art can be alleviated by the PTO examination.
> (3) In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
> (4) The outcome of the re-examination may encourage a settlement without the further use of the Court.
> (5) The record of re-examination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
> (6) Issues, defenses and evidence will be more easily limited in pre-trial conferences after a re-examination.
> (7) The cost will likely be reduced both for the parties and the Court.

GPAC, Inc., 144 F.R.D. at 63, cited in, Arctic Cat, Inc. v. Injection Research Specialists, Inc., 2003 WL 22047872, at *2 (D. Minn. Aug. 29, 2003). Accord Vdata, LLC v. Aetna, Inc., 2006 WL 3392889, at *6 (D. Minn. Nov. 21, 2006); 3M Innovative Props. Co. v. Dupont Dow Elastomers LLC, 2005 WL 2216317, at *2 (D. Minn. Sept. 8, 2005). In short, common sense

---

[3] Defendant relies on several decisions from other federal districts in support of its argument that "[a]dditional factors" should be considered. (Mem. at 8-9.) Some of these cases merely address factors, or aspects of factors, already included in the widely-accepted general standard. E.g. Accent Designs, Inc. v. Jan Jewelry Designs, Inc., 1994 WL 121673 (S.D.N.Y. 1994) (addressing whether discovery is well under way); Output Technology Corp. v. Dataproducts Corp., 22 U.S.P.Q.2d 1072 (W.D. Wash. 1991) (same). Other cases erroneously assume reexamination proceedings can benefit the litigation only if the PTO would cancel all the claims at issue. Enrotech Corp. v. Autotech Corp., 1990 WL 37217 (N.D. Ill. 1990) (noting that parties would be back before the court if "the reexamination will not resolve everything"). In any event, this Court adheres to the generally-accepted framework as articulated in Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999).

counsels that it is usually prudent for a court to await the PTO's reassessment of the patents at issue before resuming litigation over the validity, enforceability or infringement of those patents.

Defendant argues that it is far from certain that a reexamination will result in any modification of particular claims, much less the total cancellation of entire patents. (Mem. at 10-13.)  Granted, such results are not predictable.  But the fact remains that it is generally prudent for a court to await the PTO's decision on such matters unless countervailing factors weigh to the contrary.  See CNS, Inc. v. Silver Eagle Labs, Inc., 2004 WL 3631121, at *1 (D. Minn. Nov. 29, 2004) ("Notwithstanding the absence of two claims from the '362 Patent reexamination, the Court concludes that deference to that proceeding is the best use of the judicial and party resources in this case.").

Moreover, even if the reexamined patent emerges unscathed and completely intact, the Court has the benefit of the PTO's expert guidance on the prior art it addressed.  Softview Computer Products Corp. v. Ergo View Technologies Corp., 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000) ("[Even] if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims.") (citing Note, "Reexamination Reality:  How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination," 66 Geo. Wash. L. Rev. 172, 180-81 & nn. 82-83 (1997)).  In short, a stay is usually warranted unless other factors outweigh the potential benefits of awaiting the outcome of reexamination.

Here, this Court finds that there likely are benefits in waiting for the results of the PTO's reexamination of the Counterclaim Patents.  Thus, the issue becomes whether other factors outweigh these benefits.

## 2. A Stay Of The Patent Counterclaims Will Not Prejudice Defendants Or Otherwise Place Them At A Disadvantage

Defendant raises a variety of related arguments that a stay of its Patent Counterclaims would prejudice it. Defendant first argues that a blanket stay of the two Patent Counterclaims would be unfair because not all of the claims of those patents will be reexamined. (Mem. at 12, 16.) It next argues that a stay of its Counterclaims would permit Plaintiff's Patent Claims to go forward, thereby effectively bifurcating the case. (Mem. at 7-8, 19.) Defendant asserts that the potentially lengthy delay will thus preclude its ability to obtain injunctive relief as well as damages. (Mem. at 13-16.) Finally, Defendant suggests that Plaintiff's motion to stay is simply a "stalling tactic." (Mem. at 11.)

Granted, a stay by definition involves delay. But not all delay is necessarily prejudicial and here any cost of the delay is likely offset by the gains to be achieved by obtaining the PTO's expert guidance on these matters. Moreover, although Defendant raises the specter of a lengthy and open-ended delay, this Court notes that "[a]ll reexamination proceedings under this section, including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch within the Office." 35 U.S.C. § 305.[4]

Defendant also objects to Plaintiff's request that even though not all of the claims of the two Counterclaim Patents are being reexamined, the stay should nevertheless encompass the entirety of those two patents, not just the particular claims subject to reexamination. (Mem. at 8.) Although such circumstances might not present the optimal scenario for granting a stay, there is no obvious better alternative. See CNS, Inc. v. Silver Eagle Labs, Inc., 2004 WL

---

[4] The PTO's own regulations likewise provide that "[a]ll ex parte reexamination proceedings, including any appeals to the Board of Patent Appeals and Interferences, will be conducted with special dispatch." 37 C.F.R. § 1550(a).

3631121, at *1 (D. Minn. Nov. 29, 2004) (noting lack of "any solutions for an efficient and effective division of the case between" the reexamined claims and the rest).  Cf. Pacesetter Inc. v. Cardiac Pacemakers, Inc., 2003 WL 23303473, at *1, *3 (D. Minn. Nov. 19, 2003) (rejecting "option of a partial stay of the two patents that are not in reexamination" as "impracticable, if not impossible").  Given that the reasons for staying the action regarding the claims that are subject to reexamination clearly remain valid, there is no discernible way for this Court to proceed efficiently on only those claims that are not being reexamined.

Defendant next urges that Plaintiff is actually seeking a bifurcation of Defendant's Counterclaims from Plaintiff's Patent Claims.  (Mem. at 2, 8.)  Defendant suggests that it would be unfairly prejudiced by having to defend against Plaintiff's Patent Claims while not being able to pursue its Counterclaims.  (Id. at 3, 15.)  Defendant further notes that the remaining life of the '781 Patent is "only another four plus years," arguing that a delay will diminish Defendant's ability to recover damages due to Plaintiff's alleged financial problems.  (Id. at 3.)

Plaintiff counters that its Patent Claims should proceed despite the stay of the Counterclaims because "the instant action is really two distinct patent infringement suits based on patents for distinct technology forced together only by [Defendant's] counterclaims. [Defendant's] patents and [Plaintiff's] patents relate to different aspects of card processing."  (Mem. at 9.)  Plaintiff thus argues that "[d]iscovery for, claim construction of, and even trial about [Plaintiff's] patents will not, therefore, in any way hinge upon [Defendant's] Counterclaim Patents."  (Id. at 10.)

This Court rejects the suggestion that bifurcation would necessarily be prejudicial to

Defendant.[5]  Any potential prejudice would seem to arise only where Plaintiff's Patent Claims and Defendant's Patent Counterclaims would be intertwined or overlapping such that one party's claims could not be fully and fairly litigated in isolation from the opposing party's claims.

This does not appear to be the case here.  Any overlap here seems to be confined to the general nature of the basic underlying technology.  The advent of smart cards–which involve an ever-increasing amount of personalized information being coded onto the cards–apparently has resulted in a slower rate of processing card stock into finished smart cards.  Plaintiff asserts that the inventions covered by its Patent Claims permit a much higher card processing rate to be achieved by card-personalization machines such as that manufactured by Defendant.  (Complaint ¶ 8.)

Defendant's Patent Counterclaims appear to be generally directed to similar technology.  The '781 Patent pertains to a modular card processing system that "permits the use of modules which can be assembled in an arbitrary sequence to perform the required card processing functions."  '781 Patent, col. 2, ll. 39-42.  The '925 Patent generally relates to "a linear personalization machine of simpler, less costly construction," which due to its "more compact" design" permits "card processing lines of shorter length."  '925 Patent, col. 1, ll. 39-45.

Although the parties' patents thus bear a certain similarity in that they both concern the same basic technology–that is, the manufacture of smart cards–that general similarity is essentially inconsequential in the present context of determining the propriety of granting a stay.  It would appear that a jury could fairly decide the Patent Claims separately from the Patent

---

[5] The Court notes that Defendant has indicated that it likely will shortly file with the PTO a petition for the reexamination of the Plaintiff's patents, and thus also file a motion with this Court for a stay of the Patent Claims pending the outcome of that reexamination.  But resolution of that issue must await a proper motion to stay pending a reexamination, a petition for which has not yet been filed.

Counterclaims and vice versa. In other words, the relationship between the two parties' respective claims is not such as to require their simultaneous resolution by the same jury. Any loss in terms of inefficiency and duplication appears negligible.

Defendant's opposition to what it characterizes as "bifurcation" is also premised on the remedial consequences it anticipates from having to await the PTO's reexamination. It claims prejudice based on the assertion that the reexamination will take longer than the remaining life of the '781 Patent, thereby depriving it of its "right to injunctive relief." (Mem. at 13-14.) This argument rests largely on speculation. First, this Court cannot assume at this pre-trial juncture that Defendant will prevail on its infringement claims. Second, even assuming it does so prevail, a patentee has no absolute right to a permanent injunction. Even a judgment of infringement does not automatically entitle the patentee to a permanent injunction. See Ebay Inc. v. Mercexchange, L.L.C., ___ U.S. ___, 126 S. Ct. 1837, 1839 (2006) (reversing ruling that patentee is generally entitled to permanent injunction and instead applying general four-factor test for such relief).

Moreover, such injunctions necessarily presume that the patent has not expired. The courts are under no obligation, however, to manage infringement litigation so as to ensure that a judgment is entered before the patent expires. If a patent has expired, the patentee is not left without a remedy as it has the right to recover past damages and any loss of the right to exclude through an injunction while the patent is still in effect is offset by the presumably greater amount of past damages recoverable for infringement over the remaining life of the patent.

Defendant also asserts that the currently precarious financial condition of Plaintiff and its corporate parent will "virtually guarantee that [Defendant] can obtain no effective relief on the '781 Patent." (Mem. at 14.) Defendant further contends that Plaintiff is in the process of being

taken private by its corporate parent and contends that if forced to await the results of reexamination it "will be left to pursue collection of any judgment, probably in Canada, and long after the corporate entities have been stripped of any remaining value by" the entities acquiring Plaintiff. (Mem. at 15-16.) Any such arguments are not only speculative, they address matters that are beyond this Court's proper decision-making purview. This Court simply cannot alter the exercise of its discretion, much less its application of the law to the facts, in order to facilitate one party's efforts to better navigate the speculative vagaries of the business environment.

Finally, Defendant argues that Plaintiff "unduly delayed in Petitioning for Reexamination of the '925 patent," alleging that one of Plaintiff's counsel knew of the prior art cited as the basis for the reexamination petition long before filing that petition or the present motion. (Mem. at 20-21.) Plaintiff contends, however, that it properly waited before filing for reexamination until "it was apparent that [Defendant] was not going to act after being approached by [Plaintiff] with the material prior art." (Mem. at 8; see Reply Mem. at 9-10 (asserting it provided Defendant with opportunities "to acknowledge that this prior art invalidates the '781 and '925 patents or at the very least completely precludes the reading of those patents on [Plaintiff's] equipment").) On the present record, this Court cannot impute to Plaintiff any dilatory or otherwise improper motives based solely on the mere span of such time intervals.

In sum, Defendant's claims of prejudice fail to outweigh the inherit benefits of awaiting the PTO's reexamination of the bulk of the Counterclaim Patents.

### 3. A Stay Is Appropriate At This Stage Of The Litigation Where Discovery Is Not Complete and The Scheduled Trial Date Is Not Impending

The usual reason for denying such a stay is that the case has progressed through the bulk of pre-trial proceedings and is scheduled for trial shortly. E.g. Xerox, 69 F. Supp. 2d 404, 407

(W.D.N.Y. 1999) (noting that case had been pending two years, parties had engaged in substantial discovery and dispositive motion practice, and case was set for pre-trial conference two months later).  See also Agar Corp. v. Multi-Fluid, Inc., 983 F. Supp. 1126, 1128 (S.D. Tex. 1997) (denying stay where "case could be considered to be in its later stages of litigation" and court already had the benefit of a prior PTO reexamination of one of the patents).  No such concern is present here, where the parties are still in the early stages of pre-trial matters.  Cf. ASCII Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) (granting stay where "the parties are in the initial stages of the lawsuit and have undertaken little or no discovery" and "the case has not been set for trial").

      **C.      There Is No Basis To Stay The Nigerian Counterclaim**

Plaintiff contends that the Nigerian Counterclaim should also be stayed, arguing that "[t]he basis of the tort counterclaim is sufficiently related to the patent infringement counterclaims as to make a stay of all counterclaims, including the tort counterclaim, required."  (Mem. at 13.)   Plaintiff asserts that the "tort claim is intertwined with the patent infringement claims."  (Id.)  Plaintiff points out that Defendant included the Nigerian Counterclaim in this action because it, like the Patent Counterclaims, "arise[s] from sales of the same equipment allegedly infringing the Counterclaim Patents."  (Id. at 14.)  Plaintiff also contends that the stay should extend to encompass the Nigerian Counterclaim because that claim rests on supplemental jurisdiction that is premised on the Patent Counterclaims.  (Id.)

Defendant asserts there is no basis to stay its Nigerian Counterclaim, noting that the PTO will not, of course, "be interpreting, or considering in any way, the Nigerian tort issues in the reexamination process."  (Mem. at 5.)  Defendant also contends that "[d]elay of the Nigerian Counterclaim would prejudice [its] ability to prosecute the claim and it would adversely impact

this court's ability to effectively manage the case." (Id. at 6.)

This Court agrees that there is no basis presently to stay the Nigerian Counterclaim.[6] That counterclaim alleges that Plaintiff wrongfully interfered with Defendant's reasonable expectation of a business advantage in connection with a deal to supply card personalization equipment and related supplies and services to the Nigerian government. (Answer ¶ 39.) Defendant asserts that it had substantially negotiated such a deal, but refused to pay a last-minute $3 million price increase that it believed actually constituted a bribe. (Id. ¶ 43.) Defendant further alleges that Plaintiff then agreed to pay the $3 million fee and accordingly was awarded the contract with the Nigerian government. (Id. ¶ 44.) Pursuant to that contract, Plaintiff allegedly sold certain products that Defendant claims infringe its Counterclaim Patents. Defendant thus claims that it would have realized its prospective business advantage had not Plaintiff agreed to pay the bribes, such that Plaintiff's action constituted wrongful interference with that advantage. (Id. ¶¶ 50-51.)

Although the prospective economic advantage that Defendant in the Nigerian Counterclaim alleges it was wrongfully denied concerns sales of equipment that allegedly infringe Defendant's Counterclaim Patents, this claim turns in no way upon the precise scope of the claims of the patents or even upon the continuing existence of those patents. Rather, the Nigerian Counterclaim essentially rests on whether Plaintiff's actions in entering the contract at issue wrongfully interfered with a business opportunity that Defendant should have otherwise obtained–that is, that Plaintiff wrongfully took sales that should have belonged to Defendant.

---

[6] The Court notes that the parties have indicated that a recently-filed arbitration proceeding that questions Plaintiff's ownership of the patents on which it premises its present Patent Claims might warrant a stay of the entirety of the present action pending the outcome of that arbitration. But resolution of that issue must await a proper motion to stay pending arbitration, a motion which has yet to be filed.

Although the Nigerian Counterclaim is thus based on sales of equipment, the actionable wrong is not based on an allegation that the equipment sales infringed Defendant's patents. Rather, it is based on the allegation that Plaintiff took the sales from Defendant, an allegation that is independent of whether Defendant possessed valid patents claiming an invention practiced in the products it would have sold. In other words, regardless of what happens in the reexamination proceedings, Defendant could pursue the Nigerian Counterclaim because it simply is not dependent on or intertwined with the Patent Counterclaims so as to require staying it pending reexamination of the Counterclaim Patents.[7]

Nor does the fact that subject matter jurisdiction over this claim rests upon Section 1367 require, or even weigh in favor of, staying this claim. Plaintiff contends that this Court has jurisdiction over the Nigerian Counterclaim only if that claim derives from the same nucleus of operative facts as does the Patent Counterclaims. (Mem. at 15 (quoting 28 U.S.C. § 1367 (extending jurisdiction to state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III").)

Granted, such a state law claim generally may be brought in federal court only where it meets the requirements for supplemental jurisdiction under Section 1367. Here, the Patent

---

[7] The authorities on which Plaintiff relies in support of its argument are readily distinguishable. In Softview Computer Prods. Corp. v. Haworth, Inc., the court had already stayed the Plaintiff's "non-patent" claim that "defendant is improperly attempting to enforce a patent that it knows is invalid" for separate reasons independent of the bases for staying the defendant's patent claims pending reexamination. 2000 WL 1134471, at *1 n.1 (S.D.N.Y. Aug. 10, 2000) (and also noting that such claims are properly stayed because they are "dependent on the outcome of patent validity and infringement issues"). In Clintec Nutrition Co. v. Abbott Labs., 1995 WL 228988 (N.D. Ill. Apr. 14, 1995), the court simply ruled that an alleged infringer's counterclaim for inequitable conduct should also be stayed where the patentee's reissue application warranted a stay of its claims for infringement. Id. at *6. In Polaris Industries, Inc. v. Jerrico Int'l, Inc., No. 06-CV-2153 (slip op.), this Court stayed a plaintiff's Lanham Act trade dress claims as well as its patent infringement claims pending the PTO's reexamination of the patent "because of the interconnected nature of the two claims." Id. at 9.

Counterclaims provide the federal question basis for extending supplemental jurisdiction to the Nigerian Counterclaim. But the fact that the Patent Counterclaims would be stayed would not undermine the jurisdictional basis for the Nigerian Counterclaim. The Patent Counterclaims would still exist–even though stayed–and thus would still support supplemental jurisdiction.[8]

## III.  CONCLUSION

A stay of Defendant's Patent Counterclaims (Counts I & II) is warranted as the PTO's reexamination of the relevant patents could likely alter the claims at issue and otherwise facilitate this Court's resolution of this action. The other relevant factors–potential prejudice to Defendant and the stage of pre-trial proceedings–do not outweigh the benefit of awaiting the PTO's determination here. There is no basis to stay the Nigerian Counterclaim (Count V), however, because it is not dependent on or otherwise intertwined with the Patent Counterclaims.

## IV.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

---

[8] Two of the three cases on which Plaintiff relies are inapposite as they concern situations where the district court has <u>dismissed</u> the federal question claims on which supplemental jurisdiction was premised. <u>Jones v. Minn. Dept. of Corrections</u>, 2006 WL 3102984, at *10 (D. Minn. Oct. 31, 2006) (declining to exercise supplemental jurisdiction over state-law claim after dismissing all claims over which court had original jurisdiction); <u>Minnesota Ind. Ventures, L.L.C. v. City of Roseville</u>, 2006 WL 763208, at *5 (D. Minn. March 24, 2006) (same). Although Plaintiff argues based on these cases that this Court should now stay the Nigerian Counterclaim because of the possibility that the Patent Counterclaims would later be dismissed (based on the speculative assumption that the PTO would cancel all claims of the Counterclaim Patents), this Court notes that even assuming such an outcome, it still would not be <u>required</u> to then dismiss the Nigerian Counterclaim. <u>See</u> 28 U.S.C. § 1367(c)(3) (providing that district court possesses discretion, after dismissing "all claims over which it has original jurisdiction," to retain or dismiss remaining state-law claim). The third case is even less relevant because there the court in fact addressed the state-law claim in light of the fact that it had not dismissed <u>all</u> of the claims over which it had original jurisdiction. <u>Young v. Minn. Dept. of Corrections</u>, 2006 WL 2670030, at *11-12 (D. Minn. Sept. 18, 2006).

1.  Plaintiff's motion to stay certain of Defendant's counterclaims pending the PTO's reexamination proceedings (Doc. No. 80) be GRANTED IN PART (to the extent that it seeks to stay the Patent Counterclaims (Counts I & II) and DENIED IN PART (to the extent that it seeks to stay the Nigerian Counterclaim (Count V).

Dated:  February 2, 2007

   s/ Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by February 20, 2007, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.