UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Card Technology Corporation,** | Civil No. 05-2546 (MJD / SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **DataCard Corporation,** | |
| **Defendant,** | |
| and | |
| **DataCard Corporation,** | |
| **Counterclaim Plaintiff,** | |
| v. | |
| **NBS Technologies, Inc. and** | |
| **Card Technology Corporation,** | |
| **Counterclaim Defendants.** | |

---

    Mark R. Privratsky, David A. Allgeyer and Christopher R. Sullivan, Lindquist & Vennum, P.L.L.P, 4200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for Plaintiff and Counterclaim Defendants.

    Jeffrey J. Keyes, John B. Lunseth II, and James J. Long, Briggs and Morgan, P.A., 80 South Eighth Street, 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for Defendant and Counterclaim Plaintiff.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

    This matter comes before the undersigned United States Magistrate Judge on Defendant's Motion For Stay Pending Reexamination (Doc. No. 124) and Motion For Joinder and Leave To Amend Answer and Counterclaims (Doc. No. 129). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b) and District of Minnesota Local Rule 72.1.

Defendant moves to stay Plaintiff's patent infringement claims pending reexamination of two of the three patents underlying those claims and separately moves to add new parties and new counterclaims. For the reasons stated below, the Court recommends granting the motion for a stay and recommends denying as moot Defendant's motion for joinder and for leave to amend, without prejudice to its refiling upon the completion of the reexamination proceedings.

**I.    FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed this action in November 2005 alleging infringement of three of its patents, U.S. Patent No. 5,889,941 ("the '941 Patent"), U.S. Patent No. 6,014,748 ("the '748 Patent"), and U.S. Patent No. 6,196,459 ("the '459 Patent") (collectively "the Patents-In-Suit"). (Doc. No. 1.) Although Plaintiff asserted a separate cause of action for each of the three Patents-In-Suit ("the Patent Claims"), the Complaint discloses no differentiation amongst the Patent Claims in terms of which of Defendant's particular products or services infringe which particular patent.

Defendant's Answer, filed in January 2006, included counterclaims for infringement of three of its patents (Counts I, II & III), for a declaratory judgment that Plaintiff's patents were unenforceable and not valid (Count IV, "the declaratory judgment claim"), and for tortious interference with a prospective business advantage in Nigeria regarding the sale of products and services involving technology claimed in the various patents (Count V, the "Nigerian Counterclaim"). (Doc. No. 11.)[1] The technology at issue with respect to both parties' patents generally involves so-called "smart cards," that is, cards such as credit cards that include additional personalized information.

Due to a partial settlement, only two of Defendant's patents–U.S. Patent No. 5,266,781

---

[1] Although Defendant filed its Counterclaims against NBS Technologies, Inc. as well as against Card Technology Corporation, for ease of reference this Court will refer to both of the Counterclaim Defendants collectively as "Plaintiff."

("the '781 Patent") and U.S. Patent No. 6,474,925 ("the '925 Patent") (collectively, "the Counterclaim Patents")–remain at issue.[2] Defendant generally alleges that Plaintiff infringes the '781 Patent and the '925 Patent ("the Patent Counterclaims"). (Doc. No. 11.)

Under the Second Amended Pretrial Scheduling Order of September 7, 2006, the parties are still in the early stage of pre-trial proceedings. (Doc. No. 64 (ordering joint claim construction statement by March 13, 2007, with fact discovery to close on September 14, 2007, and expert discovery to close on October 12, 2007); Doc. No. 108 (staying deadlines for responsive claim charts, prior art charts and claim construction preparation, briefing and hearing).) Trial is currently scheduled for April 2008. (Doc. No. 64.)

On August 31, 2006, Plaintiff filed applications with the United States Patent and Trademark Office ("the PTO") for a reexamination of the entirety of the '925 Patent and of claims 1-3, 20-22 and 25 of the '781 Patent. After the PTO granted those requests, this Court granted Plaintiff's motion to stay the Patent Counterclaims but denied the motion with respect to the Nigerian Counterclaim. (Doc. No. 113 (Report and Recommendation).)

In late 2006 or early 2007, David R. Tushie and John Stearns ("Claimants") commenced an arbitration proceeding against Plaintiff, claiming that the acquisition of the Patents-In-Suit by Plaintiff should be rescinded and ownership of those patents be returned to the assignor. Claimants had been officers and shareholders of UbiQ, Inc., the company that assigned the Patents-In-Suit to Plaintiff in 2004. It appears that before forming UbiQ, Mr. Tushie and Mr. Stearns held senior positions within Defendant's smart card division. Mr. Tushie is listed as one of several inventors on both the '941 and '748 Patents.

---

[2] Based upon stipulated settlement agreements, the claims and defenses regarding Defendant's third patent (Count III) were dismissed with prejudice. (Doc. Nos. 71 & 73.)

In March 2007, Defendant filed with the PTO requests for reexamination of the Patents-In-Suit. (Mem. at 2.) Accordingly, Defendant filed the present motion to stay Plaintiff's Patent Claims, as well as a motion to join Claimants and UbiQ and to amend their Answer to add new counterclaims regarding the ownership, validity and enforceability of the Patents-In-Suit.

In April 2007, however, the arbitrator dismissed the claims for misrepresentation and injunctive relief and later also dismissed with prejudice the remainder of Claimants' claims. In addition, the PTO has now granted the reexamination requests with respect to the '941 and the '748 Patents, but denied the request with respect to the '459 Patent. With respect to the '459 Patent, however, Defendant has filed a Petition for Reconsideration with the Director of the Central Reexamination Unit. (See Doc. No. 143, at 1.)

## II.   DISCUSSION

### A.   A Stay Of All Three Patents-In-Suit Is Warranted

#### 1.   Granting A Stay Is Within This Court's Discretion

Federal courts have the "inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (internal citations omitted). A court is not required to stay such actions, the decision to do so being within the court's sound discretion. NTP, Inc. v. Research in Motion, Ltd., 397 F. Supp. 2d 785, 787 (E.D. Va. 2005).

Yet courts "routinely" grant such stays where the circumstances warrant. CNS, Inc. v. Silver Eagle Labs, Inc., 2004 WL 3631121, at *1 (D. Minn. Nov. 29, 2004) (granting stay where case was "in the early stages of discovery and there are obvious efficiencies to be gained" by awaiting PTO's decision). See generally Doc. No. 113 (Report and Recommendation), at 3.

## 2.   At This Stage Of The Proceedings, A Stay Of The '748 And '941 Patent Claims Is Warranted In Light Of The Pending Reexamination

Defendant claims that a stay of the Patent Claims pending the reexamination will "provide guidance to the Court regarding the validity of any affirmed or narrowed claims" and "also conserve judicial and party resources." (Mem. at 3.) Noting that this Court has stayed its Patent Counterclaims, Defendant also contends that "a reciprocal stay would ensure that both parties have similar discovery burdens and a consolidated and efficient trial schedule." (Id.)

Plaintiff originally argued that a stay of its Patent Claims is not warranted because Defendant "delayed its requests to the USPTO without any plausible explanation" and its "sole intention in moving for a stay is to obtain a tactical advantage in this litigation." (Mem. at 7-8.)[3] But requests for reexamination are presumably always, at least to some degree, in the self-interest of the party making that request and thus the timing of, and motivation for, such requests cannot necessarily be viewed as a sufficient basis to deny a stay. Moreover, now that the PTO has granted the requests for reexamination of the '748 and '941 Patents and in light of this Court's granting of Plaintiff's motion to stay Defendant's Patent Counterclaims, Plaintiff appears to recognize that a stay of the claims based on those patents is appropriate and likely. (See Doc. No. 142 (arguing that despite reexaminations of '941 and '748 Patents, Court should not stay the infringement claim based on the '459 Patent).)

Courts generally consider the following factors in deciding whether a stay would be appropriate:

(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question

---

[3] Plaintiff's other particular arguments in opposition to a stay–largely that Defendant's requests for reexamination had not yet been granted (Mem. at 12-22)–have been rendered moot by the PTO's intervening disposition of the reexamination requests.

and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.

Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999), cited in, Vdata, LLC v. Aetna, Inc., 2006 WL 3392889, at *5 (D. Minn. Nov. 21, 2006), and 3M Innovative Props. Co. v. Dupont Dow Elastomers LLC, 2005 WL 2216317, at *1 (D. Minn. Sept. 8, 2005).  Accord Agar Corp. v. Multi-Fluid, Inc., 983 F. Supp. 1126, 1128 (S.D. Tex. 1997) (listing factors of (1) PTO's expertise, (2) stay's effect on litigation, and (3) stage of litigation when stay sought).

      **(a)**     **The Reexamination Could Alter The Parameters Of The Litigation And, In Any Event, Will Likely Facilitate This Court's Resolution Of The Patent Claims**

Courts have identified numerous advantages to staying patent litigation during reexamination by the PTO:

> (1) All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.
> (2) Many discovery problems relating to the prior art can be alleviated by the PTO examination.
> (3) In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.
> (4) The outcome of the re-examination may encourage a settlement without the further use of the Court.
> (5) The record of re-examination would likely be entered at trial, thereby reducing the complexity and length of the litigation.
> (6) Issues, defenses and evidence will be more easily limited in pre-trial conferences after a re-examination.
> (7) The cost will likely be reduced both for the parties and the Court.

GPAC, Inc. v. D.W.W. Enterprs., Inc., 144 F.R.D. 60, 63 (D.N.J. 1992), cited in, Arctic Cat, Inc. v. Injection Research Specialists, Inc., 2003 WL 22047872, at *2 (D. Minn. Aug. 29, 2003). Accord Vdata, LLC v. Aetna, Inc., 2006 WL 3392889, at *6 (D. Minn. Nov. 21, 2006); 3M Innovative Props. Co. v. Dupont Dow Elastomers LLC, 2005 WL 2216317, at *2 (D. Minn. Sept. 8, 2005).  Thus it is often prudent for a court to await the PTO's reassessment of the patents at issue before resuming litigation over the validity, enforceability or infringement of

those patents.  In short, a stay is usually warranted unless other factors outweigh the potential benefits of awaiting the outcome of reexamination.

### (b) A Stay Is Appropriate At This Early Stage Of The Litigation And Where There Is No Undue Prejudice

The usual reason for denying such a stay is that the case has progressed through the bulk of pre-trial proceedings and is scheduled for trial shortly.  E.g. Xerox, 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999) (noting that case had been pending two years, parties had engaged in substantial discovery and dispositive motion practice, and case was set for pre-trial conference two months later).  No such concern is present here, where the parties are still in the early stages of pre-trial matters.  Cf. ASCII Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) (granting stay where "the parties are in the initial stages of the lawsuit and have undertaken little or no discovery" and "the case has not been set for trial").

Under the present circumstances, there seems to be little genuine issue that the claims based on the '748 and '941 Patents, for which reexamination already has been granted, should be stayed.  (See generally Doc. No. 113 (Report & Recommendation).)  Here, this Court finds that there likely are benefits in waiting for the results of the PTO's reexamination of the '941 and '748 Patents and that the other factors do not outweigh these benefits.

The question thus becomes whether the claims based on the '459 Patent, for which reexamination was initially denied, should also be stayed under these circumstances.

### 3. A Stay Of The Claims Based On The '459 Patent Will Not Prejudice Plaintiff Or Otherwise Place It At A Disadvantage

Despite the PTO's decision to reexamine the '748 and '941 Patents, Plaintiff contends that a stay of the claims based on the '459 Patent, for which reexamination has not (yet) been ordered, is nevertheless not warranted because no judicial economy or simplification of the

7

issues will result from a stay and a stay would unduly prejudice it.  (Doc. No. 142, at 2-4.) Plaintiff contends that "the inventors, background of inventions, and inventions of the '459 patent are different from those of the '748 and '941 patents" and that "[t]he '459 patent issued out of an entirely different application than the '748 and '941 patents."  (Id. at 3.)

But it does not necessarily follow, as Plaintiff asserts, that "[t]hus, at trial and during discovery, different witnesses will testify and different documents will be relied upon with respect to the patent not being reexamined versus the patents being reexamined."  (Id.)  In its Complaint, Plaintiff generally referred to the three patents collectively as "the Card Technology Patents," asserting that "[t]he inventions covered by the Card Technology Patents permit smart card processing to approach the rated capacity of commercially available personalization machines."  (Doc. No. 1, ¶ 8.)  Plaintiff also stated that the entity from which Plaintiff acquired the patents "had undertaken development of a software platform for enhancing the operation including the throughput of existing card personalization machines" and that the "development of the platform included the invention of the subject matter disclosed and covered by the '941, '748, and '459 Patents."  (Id. ¶ 12.)  In short, the Complaint reflects no fundamental distinction between the '459 Patent on the one hand, and the '941 and '748 Patents on the other, that could support differentiating between those patents in terms of the propriety of a stay.

Moreover, the fact that only a few of the claims of both the '748 and '941 Patents are being reexamined and that the '459 Patent–which Plaintiff now characterizes as "obviously the core and main thrust of [its] case"–contains "the most claims [allegedly] infringed by [Defendant]–16 " (Doc. No. 142, at 3), does not operate to adequately sever, for purposes of deciding the proper scope of the stay, the infringement claim based on the '459 Patent from those based on the two patents in reexamination.

In addition, Defendant contends that "Plaintiff is pursuing damages for lost profits on all sales by [Defendant] of its SCPM software, and also, under a theory called the 'entire market value rule,' on all machines/supplies capable of being utilized with the accused SCPM software" and argues that by seeking to proceed on the '459 Patent while the others are being reexamined, Plaintiff is thus "attempting to get two bites at one set of damages." (Doc. No. 143, p. 3 (noting that if Plaintiff loses on the '459 Patent, "it can retry the exact same damages to another jury" based on the other two patents).) Plaintiff itself notes that "[b]ecause the same SCPM-based products are accused of infringement under all three patents, the damages analysis applicable to infringement of one patent is applicable to all." (Doc. No. 142, at 4.)

As Plaintiff argued when seeking to stay Defendant's Patent Counterclaims even though not all of the claims of each patent were being reexamined, "there can be no effective and efficient means to conduct discovery as to just some of the claims of the" patent under reexamination. (Doc. No. 82, p. 8.) In support, it cited two cases that granted stays with respect to all of the patents at issue even though not all of them were being reexamined. (Id. at 8-9 (citing CNS, Inc. v. Silver Eagle Labs, Inc., 2004 WL 3631121, at *2 (D. Minn. 2004); Pacesetter Inc. v. Cardiac Pacemakers, Inc., 2003 WL 23303473, at *3-4 (D. Minn. Nov. 19, 2003)).)

This Court granted that motion, noting that splitting an infringement action so as to proceed with one portion while the rest was stayed was not the most prudent course. (Doc. No. 113 (Report & Recommendation).) Once again, although such circumstances might not present the optimal scenario for granting a stay, there is no obvious better alternative. See CNS, Inc. v. Silver Eagle Labs, Inc., 2004 WL 3631121, at *1 (D. Minn. Nov. 29, 2004) (noting lack of "any solutions for an efficient and effective division of the case between" the reexamined claims and

the rest).  Cf. Pacesetter Inc. v. Cardiac Pacemakers, Inc., 2003 WL 23303473, at *1, *3 (D. Minn. Nov. 19, 2003) (rejecting "option of a partial stay of the two patents that are not in reexamination" as "impracticable, if not impossible").

Plaintiff also argues that a stay of its '459 Patent Claims would prejudice it.  (Doc. No. 142, pp. 4-5.)  Although a stay by definition involves delay, not all delay is necessarily unduly prejudicial and here any cost of the delay is likely offset by the gains to be achieved by obtaining the PTO's expert guidance on these matters.  Furthermore, Plaintiff characterizes its requests for reexamination of Defendant's Patents as valid while arguing that Defendant's reexamination requests were brought only for purposes of obtaining "a tactical advantage."  (Id. at 4.)  But at this juncture of the proceedings and on the present record, the Court is in no position to judge the relative merits of the parties' respective reexamination requests.

In sum, Plaintiff's claims of prejudice fail to outweigh the inherit benefits of awaiting the PTO's reexamination of the '941 and '748 Patents and there is no discernible way for this Court to proceed fairly and efficiently on the one patent that is not being reexamined.  Accordingly, the Court determines that a stay of all of Plaintiff's Patent Claims is the best overall disposition.

**B.    Defendant's Motion To Add New Parties and Counterclaims Is Therefore Moot**

Defendant also has moved to join UbiQ, Inc. and two of its former shareholders, John Stearns and David Tushie, as parties to this action and for leave to amend its Answer and Counterclaims to assert certain additional counterclaims for a declaratory judgment as to ownership of the Patents-In-Suit, for "fraud and unlawful conversion," for unjust enrichment and for inequitable conduct.  (See Doc. No. 132 ([Proposed] Answer and Amended Counterclaims).)  Plaintiff objects, arguing (among other things) that (1) the deadline for such additions has passed, (2) Defendant has known of the underlying basis for the new claims "for years," (3)

10

Defendant has failed to provide *prima facie* support for its new claims, (4) inequitable conduct is only a defense, not an affirmative cause of action, (5) the fraud claim was not pled with the requisite particularity, and (6) a conversion claim is not viable here as a matter of law.  (Mem. at 23-38.)

Defendant's motion to join additional parties derives from the arbitration initiated by Mr. Tushie and Mr. Stearns.  But because the arbitrator has now dismissed all of Claimants' claims, the arbitration proceeding no longer presents any reason to join Claimants as new parties here.  Nor does that arbitration any longer provide a basis for the new declaratory judgment claim that Defendant seeks to add as Count VI.  (See Doc. No. 132, ¶¶ 60-62 (noting arbitration as one basis for declaratory judgment claim).)

Defendant also contends, however, that Plaintiff's recently-produced claim charts reveal its "broad interpretations of the patents which encompass DataCard prior art Tushie had direct first hand knowledge of while employed by DataCard."  (Mem. at 2; accord id. at 5.)  Defendant argues that "it [then] became apparent for the first time [Plaintiff's] infringement position encompasses [Defendant's] prior art known by UbiQ, Stearns and Tushie but withheld from the USPTO during prosecution."  (Mem. at 12.)  Accordingly, Defendant seeks leave to amend to add new counterclaims against the Claimants for inequitable conduct, conversion and unjust enrichment, "as well as claims seeking a declaration of ownership and/or reassignment of the subject [Patents-in-Suit] to" Defendant.  (Id.)

In light of the Court's decision that a stay of all of Plaintiff's Patent Claims is appropriate, there is no need at the present juncture to rule upon Defendant's motion to join new parties and to add additional counterclaims because both of the additions Defendant requests pertain to those Patent Claims.  Defendant seeks to add as Count VI a declaratory judgment

claim requesting a judicial determination of the ownership of the Patents-In-Suit and an order assigning them to Defendant.  (Doc. No. 132, ¶¶ 59-66.)  Defendant also moves to add as Count VII a claim for "fraud and unlawful conversion" alleging that Plaintiff has "willfully taken and interfered with [Defendant's] rights to ownership, assignment, or the peaceful use and practice of some or all of the inventions of the" Patents-in-Suit and has "fraudulently misrepresented or claimed to have an ownership interest in some or all of the inventions of" those patents.  (Id., ¶¶ 67-69.)

Next, Defendant wishes to add as Count VIII a claim for unjust enrichment, alleging that Plaintiff has "made substantial revenue from" its "use of some or all of the inventions of" those patents without Defendant's authorization or permission.  (Id., ¶¶ 70-73.)  Finally, Defendant seeks to add as Count IX a claim for "inequitable conduct," asserting that "Stearns, Tushie and UbiQ, Inc. failed to disclose material prior art known to [them] to the USPTO in connection with the filing and prosecution of the" Patents-In-Suit so as to render them unenforceable.  (Id., ¶¶ 74-76.)  As discussed above, the pending reexaminations of two of the three Patents-In-Suit–the two for which Mr. Tushie is a co-inventor–could likely reshape this litigation and do so in a manner that would impact on the additional counterclaims that Defendant now seeks to add.

Accordingly, in light of the pending reexaminations, the Court recommends denying Defendant's motion as moot, but without prejudice as to its renewal upon the completion of those reexamination proceedings.  Any intervening time (that is, between the filing of Defendant's present motion and the completion of the reexaminations) would, of course, not be considered in evaluating the timeliness of any such renewed motion.

### III.   CONCLUSIONS

A stay of Plaintiff's Patent Claims is warranted as the PTO's reexamination of (at the

present time) at least two of the three Patents-In-Suit could likely alter the claims at issue and otherwise facilitate this Court's resolution of this action. The other relevant factors–potential prejudice to Plaintiff and the stage of pre-trial proceedings–do not outweigh the benefit of awaiting the PTO's determination here.

In light of the stay of all of Plaintiff's Patent Claims, there is presently no basis to expand this litigation by the addition of additional parties and counterclaims–all of which concern the patents in reexamination–before the PTO has concluded those proceedings.

## IV. RECOMMENDATIONS

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to stay Plaintiff's Patent Claims pending the PTO's reexamination proceedings (Doc. No. 124) be GRANTED; and

2. Defendant's motion to join new parties and to add new counterclaims (Doc. No. 129) be DENIED AS MOOT WITHOUT PREJUDICE to its renewal upon the PTO's completion of the reexamination.


Dated: June 25, 2007

    s/ Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by July 11, 2007, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.