**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Card Technology Corporation,

       Plaintiff

  v.

DataCard Incorporated,

       Defendant,

and

DataCard Corporation,

       Counterclaim Plaintiff,

NBS Technologies, Inc. and Card
Technology Corporation,

       Counterclaim
Defendants.

**MEMORANDUM and ORDER**
Civil File No. 05-CV-02546
(MJD/SRN)

---

Mark D. Larsen, David Allgeyer, Mark R. Privratsky, Christopher Sullivan, Lindquist & Vennum P.L.L.P., Counsel for Card Technology Corporation.

Jeffrey J. Keyes, John B. Lunseth, James J. Long, Briggs and Morgan, P.A., Counsel for DataCard Corporation.

---

## I.    INTRODUCTION

1

This matter is before the Court on Defendant/Counterclaim Plaintiff's Motion for Rule 37 Sanctions. [Docket No. 164].

## II.   BACKGROUND

### A.  Parties

Plaintiff/Counterclaim Defendant Card Technology Corporation ("CTC") is a Delaware corporation with its principal place of business in Paramus, New Jersey.  CTC provides solutions for card personalization, including "smart cards."

Defendant/Counterclaim Plaintiff DataCard Corporation ("DataCard") is a Delaware corporation with its principal place of business in Minnetonka, Minnesota.  DataCard is a provider of equipment and software for card personalization.

### B.  Count V of DataCard's Counterclaim (Tortious Interference with Prospective Business Advantage)

DataCard alleges in its Counterclaim that, among other actions, CTC tortiously interfered with a prospective contract to deliver card personalization services for the Nigerian National ID Card Project.  DataCard asserts that CTC was awarded a subcontract after agreeing to pay additional money to facilitate

bribes of Nigerian government official. DataCard had refused to pay this bribe and believes it lost the contract because CTC agreed to take part in the scheme.

### C. Discovery Process and Orders

DataCard and CTC both have an interest in deposing Steve Hudson, an executive of CTC and the agent managing the negotiations and relationships related to the subcontract, who lives in Europe. The parties began making arrangements to depose Mr. Hudson as early as August 2006. It was hoped that Mr. Hudson would voluntarily appear at a deposition by mid-2007. However in July 2007, through his attorney, Mr. Hudson informed the parties that he would not consent to a deposition and would rather respond to letters rogatory.

DataCard filed a Motion to Compel Deposition of CTC through Managing Agent Steve Hudson on November 7, 2007 [Docket No. 151]. On December 3, 2007, the Court issued an Order granting the Motion to Compel Deposition [Docket No. 162]. CTC sent Mr. Hudson a number of requests and directives to appear for the deposition scheduled for December 19, 2007. Nonetheless, Mr. Hudson failed to appear for the deposition. On or around January 8, 2008, CTC informed Mr. Hudson that it would terminate his employment with the company unless he provided testimony at a deposition. On January 11, 2008, DataCard

filed this Motion for Sanctions, and on January 25, 2008, CTC fired Mr. Hudson for his failure to participate in the deposition.

### III.   DISCUSSION

DataCard is requesting sanctions for CTC's failure to comply with the Court's December 3, 2007 Order compelling the deposition of Mr. Hudson. DataCard requests that the Court impose the following sanctions under Rule 37(b)(2) of the Federal Rules of Civil Procedure:

> 1. Direct that the following matters be taken as established for the purpose of the action:
>
> (a) That the $3.5 million commission CTC agreed to pay Officetron under the Nigerian National ID Card Project was to be used for bribes paid by Officetron or its agents to Nigerian government officials;
>
> (b) That CTC reasonably knew the purpose of the commission was to facilitate bribes of the Nigerian government officials; and
>
> (c) That CTC knew DataCard was in negotiations with SAGEM for the project contract, and CTC agreed to pay the

            commission so that it rather than DataCard would receive the contract from SAGEM.

2.     Bar Mr. Hudson's testimony from being introduced into evidence; and

3.     Require CTC to reimburse DataCard for its expenses, including reasonable attorney's fees caused by the failure to obey the Order compelling the deposition of Mr. Hudson.

DataCard argues that sanctions are appropriate in this matter, arguing that the failure of CTC to produce Mr. Hudson for the deposition was a flagrant violation of the Order to Compel Deposition. DataCard argues that Mr. Hudson is the key employee with respect to the bribery issue and without his testimony, it will be more difficult to prove its claim of tortious interference. Further DataCard believes that, without sanctions, CTC would unfairly benefit from the non-disclosure of potentially damaging evidence.

DataCard asserts that the sanctions requested are not the most severe, but are appropriate to remedy prejudice caused by the failure of CTC to comply with the discovery order. Further, the requested sanctions will not determine the outcome of its claim as it would still need to prove causation and damages despite the admission of the requested facts.

DataCard further asserts that no other form of discovery could serve as a meaningful substitute for the deposition of Mr. Hudson. It asserts that only Mr. Hudson can testify as to his knowledge and intent concerning the commission. DataCard notes that the use of Letters Rogatory would unfairly allow CTC to choose its preferred method of discovery. Nonetheless, DataCard believes that Letters Rogatory would be inadequate as the witness would provide an unsworn, narrative statement rather than participating in a question-and-answer format. While the foreign judge may ask additional questions, DataCard believes that the likelihood of such questions producing useful information would be low, given the judge's limited knowledge of the case.

In response, CTC argues that sanctions are inappropriate in this case. CTC states that Rule 37 sanctions can only be imposed when there is a willful violation of a court order. As discussed in more detail below, however, this is a mis-statement of the law. CTC nonetheless asserts that sanctions are inapplicable, because it acted in good faith and the failure of Mr. Hudson to appear at the deposition was beyond its control. CTC also argues that any prejudice experienced by DataCard as a result of Mr. Hudson's failure to appear for his deposition can be remedied without the requested sanctions, and the sought after evidence may be obtained through Letters Rogatory.

Finally, CTC asserts that the sanctions requested by DataCard would be disproportionately punitive. CTC argues that to impose the requested sanctions would, for all intents and purposes, deprive CTC of the opportunity to present its case on the merits. It believes that the sanctions would prejudice the jury against CTC on the tortious interference claim as well as its own patent claims. CTC also asserts that if the Court grants the sanctions, it will be permitting DataCard to avoid its burden to produce sufficient evidence to establish its claim. CTC also asserts that DataCard is attempting to conceal evidence of its own wrongful conduct during its negotiations to pay a lesser commission.

**IV.**   **Standard of Review for Rule 37 Motion for Sanctions**

The Court may issue sanctions "if a party or the party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . ." Fed. R. Civ. P. 37(b)(2)(A). It is not a requirement that the party "willfully" refuse to obey the Court's discovery order. See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers, 357 U.S. 197, 207-208 (1958). "[T]he willfulness or good faith of [the party] can hardly affect the fact of noncompliance and are only relevant to the path which the District Court might follow in dealing with [the party's] failure to comply." Id. at 208. See also Kropp v. Ziebarth, 557 F.2d 142, (8th Cir. 1977) ("The District Court has broad

7

discretion to impose various sanctions set forth in Fed. R. Civ. P. 37(b)(2) . . . ."); Atlantic Cape Fisheries v. Hartford Fire Ins. Co., 509 F.2d 577, 579 (1st Cir. 1975) (stating the suggestion that sanctions cannot be imposed absent a showing of willful refusal is "clearly wrong"); Volkart Brothers, Inc. v. M/V "Palm Traders", 130 F.R.D. 285, 288 (S.D.N.Y 1990); Indep. Prods. Corp. v. Loew's Inc., 30 F.R.D. 377, 381 (S.D.N.Y. 1962).

While the Court has broad discretion to impose sanctions, that discretion is not unlimited and must be balanced against a party's due process rights under the Fifth Amendment. Rogers, 357 U.S. at 209. The Court must balance the goals of enforcing the process of discovery and ensuring adherence to policy aims of discovery with the right of a party to have its case heard on the merits. See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 705 (1982); Baker v. General Motors Corp., 86 F.3d 811 (8th Cir. 1996) rev'd on other grounds 522 U.S. 222 (1998); English v. 21st Phoenix Corp., 590 F.2d 723, 728 (8th Cir. 1979). For that reason, the most severe Rule 37(b)(2) sanctions - dismissal, default judgment, and striking pleadings in whole or in part - require a finding of willfulness to avoid being deemed an abuse of discretion. See Insurance Corp. of Ireland, 456 U.S. at 705 (discussing Hammond Packing Co. v. Arkansas, 212 U.S. 322 (1909)); English, 590 F.2d at 728; Stanton v. Iver Johnson's

8

Arms, Inc., 88 F.R.D. 290, 292 (D. Mont. 1980).  The sanction imposed must be fair and tailored to the issue raised by discovery order.  See Insurance Corp. of Ireland, 456 U.S. at 707; Keefer v. Provident Life and Accident Ins. Co., 238 F.3d 937, 941 (8th Cir. 2000).

Sanctions may be issued for the failure of a party's officer to obey a discovery order, despite the good faith of the party to comply with the order. See Fed. R. Civ. P. 37(b)(2)(A); Indep. Prods. Corp., 30 F.R.D. at 381.  It is also important to note that an adverse party is permitted to use for any purpose the deposition of a person who, at the time of the deposition, was the party's officer, director, managing agent or designee under Rule 30(b)(6) or 31(a)(4).  Fed. R. Civ. P. 32.

**V.   Analysis**

The Court finds that sanctions are appropriate here. The Court ordered Mr. Hudson to appear for a deposition on December 19, 2007.  Despite CTC's efforts, Mr. Hudson refused to appear for the deposition.  At the time of the scheduled deposition, however, Mr. Hudson remained a managing agent for CTC.  While CTC argues that it attempted in good faith to produce Mr. Hudson for the deposition, the fact remains that Mr. Hudson did not appear for the deposition on December 19, 2007, at a time when he was under CTC's control.

The judicial admission of certain facts as established in response to a Rule 37(b)(2) motion is not necessarily a severe sanction. See English, 590 F.2d at 728; Stanton, 88 F.R.D. at 292. The presumption of certain facts does not offend the right to due process and can be narrowly tailored to provide the information not produced in discovery. English, 590 F.2d at 728. "The preservation of due process [is] secured by the presumption that the refusal to produce evidence material to the administration of due process was but an admission of the want of merit in the asserted defense." Insurance Corp. of Ireland, 456 U.S. at 705.

There is no dispute that Mr. Hudson could provide key evidence as to what knowledge CTC had of any bribery activity. Mr. Hudson had direct contact with the Nigerian counterpart alleged to have facilitated the bribes, therefore he would be in the best position to reveal any information CTC may have had on the purpose of the additional $3 million added to the subcontract. CTC argues that DataCard has not established that other employees of CTC may also have the same knowledge of Mr. Hudson. The Court notes, however, that it would have been in CTC's best interests to disclose such additional sources, if they exist, in order to avoid the imposition of sanctions. They have failed to do so.

The Court also finds that the issuance of Letters Rogatory are not a comparable substitute for deposition testimony. Testimony obtained through

10

Letters Rogatory is unsworn and is in a narrative format. Furthermore, and most importantly, there is no opportunity to cross-examine the witness.

Finally, the Court finds that the requested judicial admissions are not unduly prejudicial. As noted by DataCard, it retains the burden of proving causation and damages with respect to its tortious interference claim. Furthermore, CTC is free to offer evidence to refute causation and damages.

Accordingly, the Court will admit the following facts as established.

1. The $3.5 million commission CTC agreed to pay Officetron under the Nigerian National ID Card Project was to be used for bribes paid by Officetron or its agents to Nigerian government officials; and

2. CTC reasonably knew the purpose of the commission was to facilitate bribes of the Nigerian government officials.

3. That CTC knew DataCard was in negotiations with SAGEM for the project contract, and CTC agreed to pay the commission so that it rather than DataCard would receive the contract from SAGEM.

DataCard also requests that the Court preclude any testimony by Mr. Hudson at trial. Rule 37(b)(2) permits the Court to prevent the non-compliant party from admitting the evidence that was sought after in discovery. United States v. Munger, No. 01-1536, 2003 WL 21254766, at *3 (D. Minn. May 5, 2003).

In <u>Munger</u>, the court emphasized the federal government's right to hear the testimony at a deposition before trial and reasonableness of the offered deposition opportunities in deciding that a deponent who failed to attend any of the depositions would be excluded from trial.

In order to prevent unfair surprise to DataCard in the event Mr. Hudson does choose to testify and in order to preserve the effect to the admitted facts, the Court will preclude Mr. Hudson from testifying at trial as to matters relating to the transaction performed in the course of the acquiring and fulfilling the subcontract for the Nigerian National ID Card Project.

Finally, Rule 37(b)(2)(c)[1] provides that "[i]nstead of or in addition to the orders above, the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37 (2007) (emphasis added).

Based on the circumstances here, the Court finds that the imposition of reasonable expenses would not be unjust. As detailed above, CTC violated an

---

[1] As of December 1, 2007, the subsections of Fed. R. Civ. P. 37 were renumbered. The substance of the rule has not changed. However, certain citations to the Rule 37 by the parties do not technically refer to the proper subsection. This citation refers to numbering scheme used by the updated Rule 37.

12

order compelling the deposition of Mr. Hudson when Mr. Hudson failed to appear at a time when he remained under the control of CTC.

IT IS HEREBY ORDERED that DataCard Motion for Sanctions [Doc. No. 164] is GRANTED in its entirety and sanctions are hereby imposed as set forth in this Memorandum Opinion and Order. Within thirty days from the date of this Order, DataCard shall submit an affidavit detailing those reasonable expenses incurred in bringing its motion for sanctions.

Date: May 21, 2008

                                              s / Michael J. Davis
                                              Michael J. Davis
                                              United States District Court